# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40119
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 14, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

　　　　　　　　　　　Plaintiff–Appellee,

versus

RAUL RAMIREZ-MARTINEZ,

　　　　　　　　　　　Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:14-CR-267-1

Before REAVLEY, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Raul Ramirez-Martinez pleaded guilty of conspiracy to transport and harbor aliens within the United States and to illegal reentry following

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

deportation after a previous conviction of an aggravated felony.  The district court sentenced Ramirez-Martinez to 120 months as to each count, to run concurrently.

Ramirez-Martinez claims that the district court failed formally to accept his guilty plea to the illegal-reentry count and thus wrongly sentenced him for that offense.  He has not, however, shown that any failure formally to adjudicate his guilt as to that count is reversible plain error.  *See Puckett v. United States,* 556 U.S. 129, 135 (2009).

Ramirez-Martinez does not now contend that he did not intend to plead guilty to the count or that his plea was invalid, and the record does not support such a conclusion; instead the record reflects that he was aware that he was pleading guilty to the count, knowingly and voluntarily pleaded guilty to the charge, and meant for the court to accept his guilty plea to that offense.  *See United States v. Morales-Sosa*, 191 F.3d 586, 587 (5th Cir. 1999).  Also, the record supports that the court implicitly accepted Ramirez-Martinez's plea to the illegal-reentry count; the court did not reject the guilty plea; it entered a judgment of conviction setting forth that Ramirez-Martinez had pleaded guilty to the count; and it sentenced him as to the count.  Thus, Ramirez-Martinez has not shown that any error in the formal adjudication of the plea affected substantial rights.  *See Puckett*, 556 U.S. at 135; *Morales-Sosa*, 191 F.3d at 588; *United States v. Sanford*, 429 F.3d 104, 107 n.2 (5th Cir. 2005).

Ramirez-Martinez maintains that the district court erred in assessing a four-level adjustment under U.S.S.G. § 3B1.1(a) on the ground that he was the organizer or leader of a criminal activity that involved at least five participants or was otherwise extensive.  He asserts that he did not control any other member of the alien-smuggling enterprise and merely implemented plans devised by others.  We review the factual finding that Ramirez-Martinez was a leader

for clear error and will affirm it unless it is not plausible in light of the record as a whole. *See United States v. Dadi*, 235 F.3d 945, 951 (5th Cir. 2000).

The record supports that Ramirez-Martinez was a leader in a criminal acitivity that involved at least five persons. *See* § 3B1.1(a). He admitted that he and his brother led an alien-smuggling organization in Brownsville, and the evidence supported that his participation was critical to the success of the enterprise. The record reflects that Ramirez-Martinez exercised authority and showed a high degree of participation concerning the aspects of the enterprise for which he was responsible, including, *inter alia*, employing and recruiting others to arrange the transportation and harboring of the aliens in Browns-ville, tracking their movement, exercising decisionmaking authority to protect the organization and commanding others to achieve those objectives, and mak-ing payments for the organization. In effect, he acted as a conduit between his associates in Mexico and the participants who forwarded the enterprise's aims in Brownsville; his conduct amounted to an exercise of authority over others even if he was carrying out orders from others.

To the extent that Ramirez-Martinez suggests that the adjustment was erroneous because he was not the leader or did not control all aspects of the enterprise, his claim lacks merit. The evidence supported that he was a leader and controlled at least one participant, Claudia Cerda-Lucio, whom he recruited and employed to secure and keep stash houses. *See United States v. Cooper*, 274 F.3d 230, 247 (5th Cir. 2001); § 3B1.1, comment. (n.2). The enter-prise also involved at least five participants, i.e., Ramirez and his five codefendants. *See Cooper*, 274 F.3d at 247; *United States v. Wilder*, 15 F.3d 1292, 1299 (5th Cir. 1994). Thus, the district court did not clearly err. *See Dadi*, 235 F.3d at 951; § 3B1.1, comment. (n.4)).

Ramirez-Martinez avers that the district court erred in assessing a two-

No. 15-40119

level adjustment pursuant to § 2L1.1(b)(6) on the basis that the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another. The record reflects that the illegal aliens were kept in inhumane and overcrowded conditions at the stash houses where they were confined. At a mobile home where aliens associated with Ramirez-Martinez first were held, up to 250 were present, there was no running water or electricity, the aliens slept while standing, and small meals were provided once daily. Likewise, after the aliens were transferred to a stash house that Ramirez-Martinez paid others to keep, the aliens, who numbered up to 200, lived in cramped conditions, slept on the floor, stayed in rooms with at least 30 others, were given small meals once per day, were punished for being noisy by having food withheld, and fainted from high temperatures. Those conditions merit an adjustment under § 2L1.1(b)(6). *See* § 2L1.1, comment. (n.5); *United States v. Mateo Garza*, 541 F.3d 290, 293-94 (5th Cir. 2008).

The judgment of conviction and sentence is AFFIRMED.